ALBANY, Feb. 1808.

Wynkoop
v.
Overseers of Poor.

</div>

## Wynkoop *against* the Overseers of the Poor of the city of *New-York.*

ON the 9th day of *May*, 1805, an order was made by the special justices of the city of *New-York*, on the application of the overseers of the poor of the said city, charging *Peter Wynkoop*, the reputed father of a bastard child, born of *Sarah Waring*, with the payment of one dollar and twenty-five cents weekly, for the sustenance of the said child. Upon notice of the said order, *Wynkoop* appealed therefrom, and put in surety to appear at the next general sessions of the peace, according to the statute. Upon examination of the matter, before the sessions, it appeared in evidence, that *Wynkoop* was the father of the said child. That *Sarah Waring*, the mother of the said child, was born at *Stamford*, in the state of *Connecticut*, where she resided with her father, who was settled in that town. That she came to the city of *New-York*, about the 1st day of *May*, 1801, and resided with her brother-in-law, in the capacity of a domestic servant, from that time until the 19th day of *January*, 1805, when she was delivered of the child. That the said *Sarah Waring* had not been bound apprentice or servant to any person in the city of *New-York*, by any indenture, or other contract; but that a verbal agreement had been made between her and her brother-in-law, that she should live in the family as a servant, at the wages of four dollars per

S W was born in the state of *Connecticut,* where she had a legal settlement, & on the 1st *May,* 1801, came to reside in the city of *N. York,* where she continued with the family of a relation in the capacity of a servant, until the 19th *January,* 1805, when she was delivered of a bastard child. She had not been bound as an apprentice or servant to any person, by indenture or contract in writing, though there was a verbal agreement that the person with whom she lived should pay her wages. On the application of the overseers of the poor of the city of *N. York,* an order was made, charging the reputed father of the child with its maintenance, which order, on an appeal to the sessions, was affirmed. On a *certiorari* to this court, it was held, that the mother had no legal settlement in *N. York,* and that it was competent to the justices to grant the order of filiation. *It seems,* that where the mother of a bastard child has no legal settlement within this state, the child acquires a settlement by birth.

month, which had been paid her. That no time was fixed for her continuance; but as long as they could agree, she was to continue, and not to leave him, without giving previous notice of her intention so to do. Upon this evidence, the sessions affirmed the order of the justices.

It was submitted to the court, without argument, whether the said *Sarah Waring*, at the time she was delivered of the said bastard child, was legally settled in the city of *New-York*, and if not, whether the said justices were competent to make the order aforesaid.

SPENCER, J. The legal settlement of *Sarah Waring* appears to have been in *Stamford*, in the state of *Connecticut;* and her residence in *New-York* was not of that kind, as to acquire a legal settlement there. This, however, does not touch the question arising in the case, which is, whether the justices of *New-York*, where the child was born, can make an order of filiation, when the mother has no legal settlement there : and it is supposed that they cannot, because the settlement of the bastard follows that of the mother.

The first section of the act for the relief of cities and towns from the maintenance of bastard children, expressly gives the power to any two justices of the peace of any city or county, upon examination of the matter, to make an order for the relief of the city or county within which any bastard shall be born. The removal of paupers is only an auxiliary remedy, and it was competent to the overseers, to apply for the order of filiation. The appellant is, at all events, bound to contribute to the sustenance of this illegitimate child. In my opinion, the justices had the power to make the order they did, and it must be affirmed.

VAN NESS, J. and THOMPSON, J. were of the same opinion.

KENT, Ch. J. I am also of opinion, that the order must be affirmed, but for this reason principally, that as the child was born in *New-York*, and the mother had no settlement

within the state, the child must be adjudged to be settled where it was born. The law, declaring that every bastard child follows the settlement of the mother, applies only to cases where the mother has a legal settlement within the state. If she has none, the child must be chargeable to the town where it was born, and it cannot be sent out of the state. It becomes a native citizen, by birth, and is entitled to protection, as well as bound to allegiance.

<div align="right">Order affirmed.</div>